1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MELISSA LANDUCCI,                               )     Case No.: 5:14-cv-00789-LHK
                                                )
                        Plaintiff,              )     ORDER GRANTING IN PART AND
                                                )     DENYING IN PART DEFENDANTS'
            v.                                  )     MOTION TO DISMISS
                                                )
STATE FARM INSURANCE COMPANY,                   )
Defedant DAVID VOLKER, and DOES 1               )
through 25, Inclusive,                          )
                                                )
                        Defendants.             )
_____)

Plaintiff Melissa Landucci ("Plaintiff") brings this action against Defendants State Farm

Insurance Company ("State Farm"), David Colker, and Does 1 through 25 (collectively,

"Defendants"). Defendants move to dismiss Plaintiff's third through seventh causes of action:

hostile work environment, wrongful termination in violation of public policy, intentional infliction

of emotional distress, breach of implied contract, and breach of the covenant of good faith and fair

dealing. Pursuant to Civil Local Rule 7-1(b), the Court finds this motion appropriate for

determination without oral argument.  Accordingly, the hearing set for July 24, 2014, at 1:30 p.m.

is VACATED. Having considered the briefing, the record in this case, and applicable law, the

Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

1  | **I.      BACKGROUND**
2  |       **A.       Factual Allegations**

**United States District Court**
For the Northern District of California

Plaintiff is a former employee of State Farm. She had been with the company for twenty-eight years, twenty-one of those as a damages estimator, before being terminated on January 1, 2013. ECF No. 1, Complaint ("Compl.") at ¶ 5. Defendant David Colker worked as her supervisor since 1998. *Id.* at ¶ 5. Plaintiff alleges that Colker engaged in a series of harassing acts towards her as early as 2001. *Id.* at ¶¶ 7-8. Around 2001 to 2003, Colker allegedly micromanaged and humiliated Plaintiff by looking into her company vehicle and asking why there were shopping bags in the back seat, and checking to see where she stored her computer at night and confiscating it. *Id.* Around 2003, Colker attempted to terminate her employment. *Id.* at ¶¶ 7-9. Starting in 2011, Colker engaged in a similar pattern of micromanagement. *Id.* at ¶ 10. Colker would instruct Plaintiff on how to write auto estimates, how to take photographs, and how to talk to customers. *Id.* These micromanaging incidents "sapped [Plaintiff's] confidence." *Id.* at ¶ 11-12. In 2011, Colker began making statements about Plaintiff's age, asking multiple times indirectly and directly how old she was. *Id.* at ¶ 13. He also commented on her physical capabilities. At one point in 2012, Colker asked Plaintiff if she had trouble bending down on her knees and stated: "We're not as young as we used to be." *Id.* at ¶ 16. In 2011 and 2012, Colker made these comments at least five or six times. *Id.* at ¶ 31. Colker also asked multiple times when Plaintiff was going to retire in order to intimidate her into resigning from her job. *Id.* at ¶¶ 12, 16.

After a performance review in April of 2011 when she received good marks, Colker increased his micromanagement of Plaintiff. *Id.* at ¶¶ 30-31. He criticized her performance on frequent occasions to the point where "there was no way to silence or deflect this criticism." *Id.* at 20. He would find fault with her commute times, customer service, and hours worked. *Id.* He made these criticisms in order to discriminate against her because of her gender, age, and medical condition. *Id.* at ¶ 39. Plaintiff alleges that his criticisms were unfounded, citing incidents in which she did an excellent job on a task by writing extra claims for customers and even found a shortcut to help expedite claims. *See id.* at ¶¶ 21, 24-29. Colker would also drop by or call unannounced while Plaintiff was working. *Id.* at ¶ 41. He would call her several times in the day to berate her,

which sometimes adversely affected her work performance by making her late to appointments. *Id.* at ¶¶ 37-41. He even critiqued minor errors, such as a minute discrepancy in her time card or the use of the IT department. *Id.* at ¶¶ 38, 43. Colker admitted to spending eighty percent of his time supervising Plaintiff compared to his male employees. *Id.* at ¶ 45.

Plaintiff alleges Colker gave special preference to the males in her workgroup, pointing to the favorable overtime hours they were given as well as the relatively lax scrutiny they were under. *Id.* at ¶ 33-35. Despite asking for overtime work on a consistent basis, Plaintiff received only four hours of overtime between 2011 and 2013. *Id.* at ¶ 33. Before 2011, Plaintiff used to regularly receive overtime work. *Id*. In comparison, two other male employees regularly received overtime hours despite living farther away than she did from the location of a particular worksite. *Id.* at ¶ 34. Another male employee also regularly left work early and violated several company policies in regards to timecard management and due diligence. *Id.* at ¶¶ 35-36. Yet that employee was not scrutinized by Colker for these infractions, whereas Plaintiff was critiqued for even the slightest error. *Id.* In addition, Colker once criticized Plaintiff's orthopedic shoes and her attire, despite not commenting on the male employees' fashion. *Id.* at ¶ 42.

In 2011, Colker inquired if Plaintiff had ADD. *Id.* at ¶ 46. He also refused to accommodate her various requests for sick time or to go home early due to feeling ill. *Id.* at ¶¶ 48-49. On four occasions, Plaintiff had become ill while working, but Colker refused to allow her to leave early. *Id.* at ¶¶ 50-52.

Plaintiff alleges that the State Farm management was unhelpful to her concerning her problems with Colker. Plaintiff spoke to Human Resources ("HR") representatives during this two year period. In early 2011, she spoke to an HR employee about the treatment she was receiving and asked if she would receive a pension if Colker fired her. *Id.* at ¶ 14. The employee stated: "You could steal from the company and still get a pension. You are vested." *Id.* Later in 2011, Plaintiff again spoke to the same HR employee as well as the entire section manager. *Id.* at ¶¶ 22-25. Plaintiff again reiterated her concerns about the unfair and demeaning treatment by Colker. *Id.* at ¶ 23. After these two meetings, nothing was done by State Farm to alter Colker's behavior. *Id.* at ¶ 28.

In late 2012, Colker hired another estimator to serve as Plaintiff's replacement. *Id.* at ¶ 55. In January 2013, Colker informed Plaintiff she was no longer employed by State Farm. *Id.*

### B.   Procedural Background

Landucci filed her complaint in state court on January 21, 2014, and Defendants removed the case to federal court on February 21, 2014. ECF No. 1. Plaintiff alleges seven causes of action: (1) Retaliation under California's Fair Employment and Housing Act ("FEHA") against State Farm (Compl. at ¶ 58); (2) Discrimination under Title VII of the Civil Rights Act and FEHA against State Farm (Compl. at ¶ 63); (3) Hostile Work Environment violation under Title VII and FEHA against State Farm and Colker (Compl. at ¶ 67); (4) Wrongful Termination in Violation of Public Policy against State Farm and Colker (Compl. at ¶ 70); (5) Intentional Infliction of Emotional Distress against State Farm and Colker (Compl. at ¶ 75); (6) Breach of Implied Contract against State Farm (Compl. at ¶ 78); and (7) Breach of Implied Covenant of Good Faith and Fair Dealing against State Farm (Compl. at ¶ 84).

On March 10, 2014, Defendants filed a Motion to Dismiss. ECF No. 15 ("Mot."). On March 24, 2014, Plaintiffs filed an Opposition. ECF No. 17 ("Opp'n"). Defendants filed a reply on March 31, 2014. ECF No. 17 ("Reply").

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient to state a claim, the Court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). However, the Court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when

*United States District Court*
*For the Northern District of California*

1    it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2    alleged." *Id. at 678.* "Determining whether a complaint states a plausible claim for relief . . . [is] a

3    context-specific task that requires the reviewing court to draw on its judicial experience and

4    common sense." *Id.* at 679.

5    **B.      Leave to Amend**

6        If the Court determines that the complaint should be dismissed, it must then decide whether

7    to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

8    "should be freely granted when justice so requires," bearing in mind that "the underlying purpose

9    of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

10   technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

11   marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to

12   'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure

13   deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and]

14   futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir.

15   2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

16   **III.   ANALYSIS**

17       Defendants move to dismiss Plaintiff's causes of action for hostile work environment under

18   FEHA, wrongful termination, intentional infliction of emotional distress, breach of implied

19   contract, and breach of the covenant of good faith and fair dealing. The Court GRANTS in part and

20   DENIES in part Defendants' motion to dismiss these claims, as explained below.[1]

21       **A.      Violation of the FEHA: Hostile Work Environment**

22       Plaintiff's  third cause of action against both Defendants State Farm and Colker alleges a

23   hostile work environment violation under FEHA and Title VII based on Defendants' harassment of

24   Plaintiff based on her age, gender, and medical condition. Compl. at ¶¶ 67-69. Defendants move to

25   ───────────────────

26   [1] In their Reply, Defendants note how Plaintiff filed her opposition to the motion to dismiss ten
     days late, and thus ask the Court to disregard the arguments made in the opposition and to grant
     Defendants' motion on that basis. Reply at 1n1. The Court declines Defendants' invitation to

27   ignore the opposition, but warns Plaintiff that the Court will not tolerate any future late filings and
     that failure to follow the Civil Local Rules in future filings may result in sanctions of the kind

28   suggested by Defendants in their Reply.

Case No.: 5:14-cv-00789-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**United States District Court**
For the Northern District of California

dismiss only Plaintiff's FEHA claim. Mot. at 6. The Court will first analyze as a threshold matter whether State Farm may even be held liable under FEHA for Colker's alleged conduct before reaching the arguments in Defendants' motion to dismiss.

### 1.      FEHA Liability for Colker and State Farm

It is unlawful "[f]or an employer . . . or any other person, because of race, religious creed . . . physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age . . . to harass an employee[.]" Cal. Gov't Code § 12940(j)(1). The FEHA specifically makes harassment by an employee unlawful. *See* Cal. Gov't Code § 12940(j)(3) ("An employee . . . is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer . . . knows or should have known of the conduct and fails to take immediate and appropriate corrective action."). Moreover, "an employer is strictly liable under the FEHA for sexual harassment by a supervisor." *State Dept. of Health Services v. Sup.Ct. (McGinnis)*, 31 Cal. 4th 1026, 1042 (2003); *see Myers v. Trendwest Resorts, Inc.*, 148 Cal.App.4th 1403, 1420 (2007) ("Because the FEHA imposes this negligence standard only for harassment 'by an employee other than an agent or supervisor', by implication the FEHA makes the employer strictly liable for harassment by a supervisor") (citation omitted). The FEHA defines a "supervisor" for purposes of employer liability as anyone having authority from the employer to "hire, transfer, suspend, lay off, recall, promote, discharge, assign, *reward, or discipline* other employees, *or the responsibility to direct them*, or to adjust their grievances, or effectively to *recommend* that action, if, in connection with the foregoing, the exercise of that authority is not of a merely routine or clerical nature, but requires the use of independent judgment." Cal. Gov. Code § 12926(t) (emphasis added).

Here, Defendant Colker, as an employee of State Farm, may be held liable under the FEHA for any harassing acts he made. State Farm may also be held liable for Colker's actions because Plaintiff has pleaded sufficient facts that Colker is a "supervisor" under FEHA: Plaintiff states Colker was Plaintiff's "team manager" with supervisory power over Plaintiff and with power to fire her. Compl. at ¶¶ 5, 55.

Case No.: 5:14-cv-00789-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

### 2.    Gender, Medical Condition, and Age Harassment

Defendants argue that Plaintiff's hostile environment claims are insufficiently pled. The elements for a claim of hostile environment under FEHA are: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment because of being a member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *See Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal. 4th 121, 130 (1999). To fulfill the "severe or pervasive" prong, a plaintiff must show a "concerted pattern of harassment of a repeated, routine, or generalized nature." *Id.* at 131 (citation omitted). Isolated incidents that do not exist in a concerted pattern can also fulfill the "severe or pervasive" prong, but only if such isolated incidents consist of "a physical assault or the threat thereof." *Hughes v. Pair*, 46 Cal. 4th 1035, 1049 (2009) (quoting *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 284 (2006)). Further, the prohibition of harassment "forbids only behavior so objectively offensive as to ... create a hostile or abusive work environment." *See Lyle,* 38 Cal. 4th at 283. Whether an environment is hostile or abusive can be determined "only by looking at all the circumstances [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 283 (citation omitted). Merely "offensive comments" in the workplace are not actionable. *See id.* (citation omitted).

Below, the Court will address each of Plaintiff's claims of harassment based on gender, medical condition, and age separately.

#### a.    Gender

Plaintiff alleges she suffered gender-based harassment such that a "reasonable female in [her] circumstances would have considered the work environment to be hostile or abusive." Compl. at ¶ 68. Plaintiff alleges that Colker's micromanagement of her, his excessive criticisms of her work, and his "pattern and practice of stopping by her place of work at the drive-ins to reprimand her" were due to her gender. *Id.* at ¶¶ 39, 41. She alleges Colker criticized her "work habits, company van, hours, work quantity, attitude, and opinions," and "made disparaging remarks about

7

United States District Court
For the Northern District of California

nearly every aspect of her work product." *Id.* at ¶¶ 39, 43. He would find fault with her commute times, customer service, and hours worked. *Id.* at ¶ 20. Further, Colker recorded the number of times she contacted the IT department for aid. *Id.* at ¶ 43. Plaintiff alleges that "the other estimators and trainers" were "not subjected to the same treatment as she was. Some were able to make business decisions without experiencing much in the way of negative feedback." *Id.* at ¶ 33. Colker "used a different set of rules for her than he did for the males, often imposing discriminatory discipline on [Plaintiff] and no discipline at all on male coworkers." *Id.* at ¶ 35. Colker also gave special preference to the males in her workgroup not only by giving them lax scrutiny of their work, but also by giving them favorable overtime hours. *Id.* at ¶¶ 33-35. Finally, Plaintiff alleges Colker twice made derogatory statements to her about her choice of clothing. Colker one time chastised Plaintiff about her choice to wear orthopedic shoes and another time criticized her for wearing a white blouse. *Id.* at ¶ 42. He did not "in any way direct the males estimators as to what shirt, shoes or clothes they should wear." *Id.* Defendants move to dismiss Plaintiff's gender-harassment claim, arguing that "there were no offensive gender related comments or actions," and thus the Plaintiff's allegations fail to meet the "severe or pervasive" standard for harassment. Mot. at 5, 7. The Court DENIES Defendants' motion.

First, the Court finds that Plaintiff's allegations suffice to show that Defendants' harassment was "severe or pervasive." In addition to alleging that Colker commented on Plaintiff's choice of clothing several times while not commenting on the clothing of male employees, Plaintiff alleges that, as a result of her gender, Colker treated Plaintiff completely differently than her male co-workers by consistently and excessively micromanaging her every step and criticizing her work nonstop. Compl. at ¶¶ 20, 35-43. Such allegations suffice because conduct directed at an employee because of his or her gender "may create a hostile work environment even though the words and conduct are not sexual in nature" or inherently gender-based. *See Hong v. Right Mgmt. Consultants, Inc.,* 2006 WL 335291, at *5-6 (N.D. Cal. Feb. 14, 2006) (denying defendant summary judgment on hostile work environment claim based on gender because plaintiff's allegations that defendant (1) made derogatory remarks concerning plaintiff's professional competence and (2) engaged in a course of demeaning and intimidating conduct towards plaintiff

8

1    which defendant did not do to plaintiff's male co-workers who received preferential treatment

2    raised a triable issue of fact); *see also Rico v. Jones Lang LaSalle Americas, Inc.,* 2014 WL

3    1512190, at *2-3 (C.D. Cal. Apr. 16, 2014) (holding that plaintiff's allegations of negative

4    performance reviews, criticism, and demeaning comments related to her pregnancy "taken

5    together, suggest at least a possibility that Patterson engaged in a pattern of harassing conduct

6    toward [p]laintiff based on her pregnancy" and thus were "sufficiently severe" to plausibly allege a

7    harassment claim based on pregnancy).

8         Second, the Court addresses Defendants' argument that Colker's micromanagement and

9    criticisms of Plaintiff constituted "necessary personnel management duties" and thus cannot serve

10   as a basis for a hostile work environment claim as a matter of law. Mot. at 6, 8-9 (citing *Reno v.*

11   *Baird*, 18 Cal. 4th 640, 645-47 (1998)). In order to address this argument, the Court must first

12   explain the difference between discrimination claims under FEHA and harassment claims under

13   FEHA.

14        Under the FEHA, harassment and discrimination fall under separate statutory prohibitions.

15   *See* Cal. Gov. Code §§ 12940(a), (j)(1). To give effect to this distinction, California courts have

16   distinguished harassing acts from discriminatory acts. *Reno,* 18 Cal. 4th at 645-46, 657.

17   "[H]arassment focuses on situations in which the social environment of the workplace becomes

18   intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive

19   message to the harassed employee." *Roby v. McKesson Corp.,* 47 Cal. 4th 686, 706 (2009).

20   Harassing acts constitute "conduct outside the scope of necessary job performance . . . presumably

21   engaged in for personal gratification, because of meanness or bigotry, or for other personal

22   motives." *Reno*, 18 Cal. 4th at 646. "Harassment is not conduct of a type necessary for

23   management of the employer's business or performance of the supervisory employee's job." *Id.*

24   "[C]ommon[] necessary personnel management actions such as hiring and firing . . . promotion or

25   demotion, performance evaluations, the provision of support . . . do not come within the meaning

26   of harassment." *Id.* at 646–47 (quoting *Janken v. GM Hughes Elec.*, 46 Cal. App. 4th 55, 63–65

27   (1996)). Discriminatory acts in contrast, "arise out of the performance of necessary personnel

28   management duties." *Id.* at 647 (citation omitted). Conduct such as "hiring and firing, job

9

1   or project assignments, office or work station assignments, promotion or demotion, performance

2   evaluations . . . may retrospectively be found discriminatory if based on improper motives[.]" *Id.*

3   (citation omitted).

4          Despite this distinction, the California Supreme Court has held that "official employment

5   actions" *can* be considered as part of the conduct supporting a harassment claim when the actions

6   convey an offensive and hostile message to the employee. *Roby,* 47 Cal. 4th at 708. *Roby* confirms

7   the holding in *Reno* and *Janken* that necessary personnel management actions based on

8   discriminatory motives are typically remedied by FEHA claims for discrimination rather than

9   harassment. *Id.* at 707. However, *Roby* recognized that "although discrimination and harassment

10  are separate wrongs, they are sometimes closely interrelated, and even overlapping, particularly

11  with regard to proof." *Id.* Thus, "some official employment actions done in furtherance of a

12  supervisor's managerial role can also have a secondary effect of communicating a hostile message.

13  This occurs when the actions establish a widespread pattern of bias." *Id.* at 709 (citation omitted)

14  ("[S]ome actions that Schoener took with respect to Roby are best characterized as official

15  employment actions rather than hostile social interactions in the workplace, but they may have

16  contributed to the hostile message that Schoener was expressing to Roby in other, more explicit

17  ways."). This secondary effect can also occur when the actions are taken in an "unnecessarily

18  demeaning manner." *Id.* at 709 n.10. Additionally, if the jury determines that the supervisory

19  employment actions were motivated by discrimination, those actions can be used to establish

20  "discriminatory animus on the part of the manager responsible for the discrimination, thereby

21  permitting the inference that rude comments or behavior by that same manager was similarly

22  motivated by discriminatory animus." *Id.* at 709. As such, "discrimination and harassment claims

23  can overlap as an evidentiary matter." *Id.* While "FEHA treats discrimination and harassment as

24  distinct categories, ... nothing ... requires that the evidence in a case be dedicated to one or the other

25  claim but never to both." *Id.* at 710.[2]

---

[2] In *Roby,* the plaintiff's supervisor made negative comments to plaintiff about her body odor, ostracized her in the office, expressed disapproval when she took rest breaks, and overlooked her when handing out small gifts to other employees. He also disciplined the plaintiff over repeated absences, which were due to a medical condition, and ultimately terminated her employment. *Id.* at

Case No.: 5:14-cv-00789-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

The import of *Reno* and *Roby* is that Defendants here are correct that "managerial actions" typically form the basis of a *discrimination* claim under FEHA, not a *harassment* claim. *See Reno*, 18 Cal. 4th at 646-47. However, *Roby* makes clear that official employment actions may be considered when evaluating a harassment claim if the conduct contributes to communicating the hostile and harassing message of the supervisor. *Roby*, 47 Cal. 4th at 708-9 (examples of such conduct included "shunning of Roby during staff meetings, Schoener's belittling of Roby's job, and Schoener's reprimands of Roby in front of Roby's coworkers").[3] Here, Plaintiff argues under *Roby* that Colker's supervisory actions with respect to Plaintiff had the secondary effect of communicating his hostile message that females are not valued. Opp'n at 15 ("Plaintiff's complaint is replete with factual allegations of defendant Colker relentlessly scrutinizing and criticizing Plaintiff's job performance which created a "pattern of harassment motived by Plaintiff's . . . gender."). Construing the Complaint in a light most favorable to the Plaintiff, the Court concludes Plaintiffs' allegations at least colorably allege that Colker, by excessively monitoring, micromanaging, and criticizing Plaintiff but not her male co-workers, engaged in discriminatory actions based on her gender in order to send a message to the work force that female employees were not valued. This is because Plaintiff pleads that those official supervisory actions consisted of a widespread pattern and were done in an "unnecessarily demeaning manner." *Roby*, 47 Cal. 4th at 709; Compl. at ¶ 11 (describing Colker's "pattern and practice of berating [and] disrespecting [Plaintiff]."); *see also id.* at ¶¶ 23, 68. Accordingly, the Court rejects Defendants' argument that Colker's micromanagement and criticisms of Plaintiff constituted "necessary personnel management duties" that thus have no relevance to her hostile work environment claim.

---

695. A jury found in plaintiff's favor on her FEHA harassment claim. *Id.* at 692. The Court of Appeal reversed, reasoning that personnel decisions cannot constitute harassment. *Id.* at 700. The court thus disregarded every act that could be characterized as a personnel decision. *Id.* The California Supreme Court reversed, holding that the Court of Appeal had improperly excluded discriminatory personnel decisions in examining plaintiff's harassment claim. *Id.* at 709.

[3] Even Defendants themselves admit that *Roby* held that personnel management decisions may support a harassment claim where a plaintiff has introduced other evidence from which "the jury could reasonable infer that [the supervisor's] constant hostility toward [plaintiff] was also based on her [protected class], thus constituting harassment in violation of the FEHA." Reply at 6 (citing *Roby*, 47 Cal. 4th at 711).

Case No.: 5:14-cv-00789-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

1    In sum, the Court DENIES Defendants' motion to dismiss Plaintiff's claim for gender-

2    based harassment.

3                          **b.    Medical Condition**

4        Plaintiff brings a hostile work environment claim based on harassment due to her medical

5    condition. Plaintiff alleges she "suffers from Obsessive Compulsive Disorder (OCD), Attention

6    Deficit Disorder (ADD), high blood pressure, diabetes, irritable bowel syndrome (IBS), high

7    cholesterol, edema, vertigo and depression." Compl. at ¶ 46. Plaintiff alleges that all these medical

8    conditions were known to Defendants and were documented in her medical file. *Id.* In addition, she

9    alleges Colker denied her request to go home when she was feeling sick at least four times in 2011

10   to 2013, thus compelling her to work while she was "severely ill." *Id.* at ¶¶ 50-52. Plaintiff also

11   alleges Colker "denied her requests for time to maintain her medical appointments" and insisted

12   that she "use vacation time instead of sick leave for doctor's appointments." *Id.* at ¶¶ 47, 68. Colker

13   also "created impediments to her efforts to seek medical treatment for her various medical

14   conditions." *Id.* at ¶ 53. Colker also had a "pattern, practice, custom and habit of making

15   demeaning comments" about her medical conditions. *Id.* at ¶ 68. Colker once directly inquired if

16   Plaintiff had ADD in 2011, and "often attempted to determine the reason for her request for going

17   to the doctor." *Id.* at ¶¶ 47, 53. Finally, like her gender harassment claim, Plaintiff alleges that

18   Colker's micromanagement of her, his excessive criticisms of her work, and his "pattern and

19   practice of stopping by her place of work at the drive-ins to reprimand her" were due to her

20   medical condition. *Id.* at ¶¶ 39, 41. She alleges Colker criticized her "work habits, company van,

21   hours, work quantity, attitude, and opinions," and "made disparaging remarks about nearly every

22   aspect of her work product." *Id.* at ¶¶ 39, 43.

23       Defendants move to dismiss Plaintiff's allegations, focusing solely on the ADD comment

24   by Colker and arguing that the "single isolated comment [concerning her ADD] over a two year

25   period is insufficient to establish" the "severe and pervasive prong" of the claim. Mot. at 7. The

26   Court DENIES Defendants' motion.

27       The Court agrees that Plaintiff's allegation of one comment by Colker concerning whether

28   she had ADD does not by itself meet the "severe or pervasive" prong of the test. *See Lyle,* 38

United States District Court
For the Northern District of California

1    Cal.4th at 284 ("[A]n employee generally cannot recover for harassment [under the FEHA] that is

2    occasional, isolated, sporadic, or trivial."). However, Plaintiff also alleges a series of actions by

3    Colker which suggest he discriminated against her based on her medical condition, including

4    micromanaging her, constantly criticizing her, denying her requests to go home when she felt sick

5    various times, denying her request to take time for her medical appointments, and actually creating

6    impediments to her efforts to seek medical treatment for her various medical conditions. The Court

7    finds these facts suffice to allow a jury to find a concerted pattern of harassment of a "repeated

8    routine of a generalized nature." *See Morrow v. City of Oakland*, 2012 WL 2133755, at *18 (N.D.

9    Cal. June 12, 2012); *see also Broten v. Target Corp.*, 2014 WL 1677586, at *3 (S.D. Cal. Apr. 25,

10   2014) (reasoning that plaintiff's allegations that defendant, while plaintiff was on medical leave,

11   encouraged plaintiff to go on permanent disability, warned plaintiff he would be fired if he came

12   back to work, and issued a "bogus" corrective action against plaintiff when he did come back could

13   support a finding of medical condition harassment); *see also Mayfield v. Trevors Store, Inc.*, C-04-

14   1483 MHP, 2004 WL 2806175, *4 (N.D. Cal. Dec. 6, 2004) (denying motion to dismiss

15   harassment claim based on sex where plaintiff alleged that defendant "wrote negative performance

16   evaluations, assigned [plaintiff] large amounts of extra work, and denied [plaintiff] a sick day").

17        Defendants again argue that conduct arising out of "necessary personnel management

18   duties," such as the refusal to grant a request for sick leave or criticize plaintiff's work product,

19   "cannot form the basis of a harassment claim." Mot. at 7 n.2 (citing *Reno*, 18 Cal. 4th at 646-47).

20   However, as discussed above in relation to Plaintiff's gender-based harassment claim, this

21   argument fails because Plaintiff has pleaded plausible facts supporting the inference that Colker's

22   refusals to accommodate Plaintiff's medical requests and micromanagement of her was done out of

23   animus towards her medical conditions, and had the "secondary effect of communicating a hostile

24   message." *Roby,* 47 Cal. 4th at 709. This is because Plaintiff pleads that those actions were done in

25   an "unnecessarily demeaning manner." *Id.*; Compl. at ¶ 11 (describing Colker's "pattern and

26   practice of berating [and] disrespecting [Plaintiff]."); *see also id.* at ¶¶ 23, 68.

27        In sum, the Court DENIES Defendants' motion to dismiss Plaintiff's medical condition

28   harassment claim.

13

### c.    Age

"To prevail on an age-based hostile workplace/harassment claim, [a plaintiff] must show that she was subjected to verbal or physical conduct of an age-related nature, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1069 (N.D. Cal. 2011). As with other harassment claims, to be pervasive, the offensive conduct must consist of "more than a few isolated incidents." *Lyle*, 38 Cal. 4th at 284; *see also Cozzi*, 787 F. Supp. 2d at 1072 ("The 'severe or pervasive' standard excludes occasional, sporadic, isolated, or trivial incidents of verbal abuse."). The Court DENIES Defendants' motion to dismiss Plaintiff's age-based hostile work environment claim, as explained below.

Plaintiff alleges that Colker made a series of age-related demeaning comments to her from 2011 to 2013. *See* Compl. at ¶¶ 14, 22-25. Colker would ask questions such as "How old are you anyway" or "We're not as young as we used to be" or "Aren't you a baby boomer?" or "When are you going to retire anyway?" Compl. at ¶¶ 13, 16. Colker also suggested Plaintiff was too old to competently perform her job, stating that "[t]he estimating world has passed you by." Compl at ¶ 31. Plaintiff alleges Colker made these verbal comments at least 5 or 6 times throughout 2011 and 2012. Compl. at ¶ 31; *see id.* at ¶ 68 (alleging Colker had a "pattern, practice, custom and habit of making demeaning comments" about her age). One time he even asked her how old she was, stating that he could look up her age in her "HR Shield," referring to her personnel file. *Id.* at ¶ 18. This was the third time he had asked her directly for her age. *Id.*

Beyond these direct comments, Plaintiff alleges Colker implied to Plaintiff that Plaintiff's age meant she should retire. For example, Colker made comments such as "you would not make this much money somewhere else," "that she needed to stay current in her job by enhancing her estimating knowledge," and it was "difficult to compete in a company that was changing so rapidly." Compl. at ¶¶ 11-12. He also commented on "how hard it was to change, his clear point being that older people (like her) are resistant to change." *Id.* at ¶ 13.

Plaintiff alleges that in addition to these verbal comments, Colker engaged in a series of overly-harsh micro-managerial actions designed to harass her based on her age. *Id.* at ¶ 39. She

14

1    alleges that Colker criticized her "work habits, company van, hours, work quantity, attitude, and

2    opinions," and "made disparaging remarks about nearly every aspect of her work product." *Id.* at ¶¶

3    39, 43.

4         Defendants move to dismiss Plaintiff's age harassment claim because the comments

5    Plaintiff alleges are "isolated statements over a two year period" and thus cannot rise to the level

6    required by the "severe or pervasive" prong of the FEHA. Mot at 7. The Court disagrees.

7         Plaintiff has pleaded sufficient facts supporting her claim of age-based harassment. For one

8    thing, "[o]ffensive comments alone may cause an employee's work environment to be sufficiently

9    hostile to constitute actionable harassment if they are pervasive enough to interfere with the

10   reasonable victim's work environment." *Mayfield*, 2004 WL 2806175, at *4. Here, rather than

11   alleging one or two isolated comments or incidents, Plaintiff alleges that Colker made a series of

12   mean-spirited age-related insults and comments over the course of two years which could plausibly

13   interfere with the reasonable employee's ability to focus and maintain composure at work. Thus,

14   Plaintiff's allegations of age harassment are not isolated or trivial as Defendants contend but rather

15   demonstrate a pattern of discrimination against Plaintiff based on her age. *See, e.g.*, *Felix v.*

16   *California*, 2013 WL 3730176, at *7 (E.D. Cal. July 12, 2013) (denying defendant's motion to

17   dismiss where plaintiff's allegations of age-based harassment based on defendant's alleged

18   "derogatory comments about [plaintiff's] age that suggested that he was incompetent at his job,

19   was too old for his wife, [and] was unable to take care of his newborn child" were "minimal but

20   sufficient at this early stage" to meet severe or pervasive prong); *Schladech v. Dignity Health*, 2013

21   WL 6512909, at *5 (E.D. Cal. Dec. 11, 2013) (denying defendant's motion to dismiss harassment

22   claim based on age because plaintiff's allegations that defendants told supervisors to hire younger

23   employees and had practice of replacing older employees with younger ones plausibly met the

24   "severe or pervasive" prong of the FEHA).

25        Again, here, Defendants' argument that Colker's micromanagement and criticisms of

26   Plaintiff constituted "commonly necessary personnel management decisions" and thus cannot serve

27   as a basis for a hostile work environment claim, Mot. at 6, 8-9, fails because Plaintiff has pleaded

28   plausible facts supporting the inference that Colker's micro-management was done out of animus

United States District Court
For the Northern District of California

towards her age and had the "secondary effect of communicating a hostile message." This is because Plaintiff pleads that those actions were done in an "unnecessarily demeaning manner." *Roby*, 47 Cal. 4th at 708-9; Compl. at ¶ 11, 23, 68; *see also Schladech*, 2013 WL 6512909, *5 (citing *Roby* and denying motion to dismiss age-based harassment claim because "it is plausible that Defendants, acting in their official capacities, engaged in a pattern of discriminatory actions which sent a message to the work force that older employees were not valued[.]").

In sum, the Court DENIES Defendants' motion to dismiss Plaintiff's age-based harassment claim.

### B.      Wrongful Termination In Violation of Public Policy

Plaintiff's fourth cause of action alleges State Farm and Colker engaged in discriminatory and retaliatory action by wrongfully terminating her without an appropriate investigation beforehand, in violation of public policy. Compl. ¶¶ 70-72. Defendants move to dismiss Colker as a Defendant on this claim, correctly noting that a non-employer individual defendant, such as a supervisor or manager, cannot be held liable as a matter of law for the tort of wrongful termination because he or she is not the plaintiff's employer. *See* Mot. at 5; *Milosy v. The Regents of the University of California*, 44 Cal. 4th 876, 900 (2008). Plaintiff concedes this point and thus has agreed to remove Colker from her wrongful termination claim. Opp'n at 12. Thus, the Court GRANTS Defendants' motion to dismiss Plaintiff's wrongful termination claim against Colker with prejudice.

### C.      Intentional Infliction of Emotional Distress

Defendants move to dismiss Plaintiff's fifth cause of action, which is an intentional infliction of emotional distress ("IIED") claim against both State Farm and Colker. Mot. at 9. The Court GRANTS Defendants' motion with leave to amend.

Under California law, the tort of IIED comprises three elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (Cal. Ct. App. 1998). The

16

United States District Court
For the Northern District of California

1    alleged outrageous conduct "must be so extreme as to exceed all bounds . . . usually tolerated in a

2    civilized community." *Id.* Similarly, the emotional distress suffered by a Plaintiff must be of such

3    "substantial quality or enduring quality that no reasonable [person] in civilized society should be

4    expected to endure it." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (1993). "With

5    respect to the requirement that the plaintiff show severe emotional distress, this court has set a high

6    bar." *Hughes,* 46 Cal. 4th at 1051. " '[S]evere emotional distress' means highly unpleasant mental

7    suffering or anguish 'from socially unacceptable conduct' ..., which entails such intense, enduring

8    and nontrivial emotional distress that 'no reasonable [person] in a civilized society should be

9    expected to endure it.' " *Schild v. Rubin,* 232 Cal.App.3d 755, 762–763 (1991) (citations omitted).

10           Plaintiff alleges both Defendants engaged in "extreme and outrageous conduct by

11   discriminating" against her with the intent to cause Plaintiff "mental anguish, anxiety, and

12   distress." *Id.* at ¶¶ 76-77; Opp'n at 20. Defendants move to dismiss Plaintiff's IIED claim by

13   arguing that "normal supervisory conduct, such as managing and reviewing employee work,

14   performance evaluations, criticism and discipline and the like do not constitute extreme and

15   outrageous conduct as a matter of law." Mot. at 10 (citing *Reno*, 18 Cal. 4th at 646-47 and *Janken*,

16   46 Cal. App. 4th at 80). The Court need not reach Defendants' argument that Plaintiffs fail to

17   allege extreme and outrageous conduct because the Court GRANTS Defendants' motion on the

18   ground that Plaintiff fails to plead sufficient facts showing she suffered "severe or extreme

19   distress." While Defendants do not raise this argument, the Court may dismiss an action *sua sponte*

20   without notice where, as here, it is obvious that the plaintiff "cannot possibly win relief." *See*

21   *Gambill v. United States,* 554 Fed. App'x 558, at *1 (9th Cir. Jan. 28, 2014) (unpublished) (quoting

22   *Sparling v. Hoffman Const. Co.,* 864 F.2d 635, 638 (9th Cir. 1998) ("A trial court may act on its

23   own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim ....

24   The court must give notice of its intention to dismiss and give the plaintiff some opportunity to

25   respond unless the plaintiffs cannot possibly win relief."); *see also Omar v. Sea–Land Service, Inc.,*

26   813 F.2d 986, 991 (9th Cir. 1987) ("[S]uch a dismissal may be made without notice where the

27   claimant cannot possibly win relief.").

28

United States District Court
For the Northern District of California

1    The California Supreme Court has held that emotional distress resulting in minor physical

2   harm does not fulfill the "severe or extreme" distress prong. *See Hughes*, 46 Cal. 4th at 1051

3   ("[P]laintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern,

4   and agitation as the result of defendant's comments to her . . .  do not comprise 'emotional distress

5   of such substantial quality or enduring quality that no reasonable [person] in civilized society

6   should be expected to endure it.'") (citation omitted); *see also Lawler v. Montblanc N. A., LLC*,

7   703 F. 3d 1235, 1246 (9th Cir. Jan. 11, 2013) (holding that Plaintiff's emotional injuries of

8   "anxiety, sleeplessness, upset stomach, and sometimes muscle twitches" did not rise to the level of

9   severe emotional distress); *Jones v. City of Fresno*, 2013 WL 796620, at *8 (E.D. Cal. Mar. 4,

10   2013) (holding that Plaintiff's injuries of "grief, anxiety, worry, frustration, hurt, fear, and

11   otherwise distress" did not rise to the level of severe emotional distress). Courts have also held that

12   the plaintiff must allege facts that indicate the "nature or extent of any mental distress suffered as a

13   result of the alleged outrageous conduct." *Hamilton v. Prudential Fin.*, 2:07CV00944MCEDAD,

14   2007 WL 2827792, at *4 (E.D. Cal. Sept. 27, 2007) (citation omitted) (holding plaintiff failed to

15   allege facts showing he suffered severe mental distress where plaintiff only generally alleged that

16   he suffered from "depression," "frustration," "nervousness and anxiety" because those "conclusory

17   statements lack the necessary specific facts to show their nature or extent").

18    Here, Plaintiff fails to allege any form of emotional distress beyond the conclusory

19   allegation that Defendants' actions "cause[d] her mental anguish, anxiety, and distress" and that at

20   some point she "felt extremely emotionally distressed and pained, fearing for her job and

21   livelihood." Compl. at ¶¶ 28, 77. She also fails to explain the nature and extent of the mental

22   distress suffered. Accordingly, Plaintiff has failed to plead sufficient facts to satisfy the "severe or

23   extreme emotional distress" prong. *See, e.g, Nelson v. County of Sacramento*, 926 F. Supp. 2d

24   1159, 1172 (E.D. Cal. 2013) (holding plaintiff failed to plead facts showing why his alleged

25   emotional distress rose to a level that "no reasonable [person] ... should be expected to endure it"

26   where plaintiff alleged "pain, grief, shame, humiliation, embarrassment, anger, disappointment,

27   depression, sleeplessness, anxiety, disappointment, damage to reputation, and worry" because

28   allegations were "conclusory" and lacked "specific facts to show their nature and extent.");

18

1   *Fernandes v. Northwestern Engineer Co., Inc.*, 2012 WL 5182817, at *5 (C.D. Cal. Oct. 15, 2012)

2   (holding that conclusory allegations of "depression and despair" did not rise to severe emotional

3   suffering because plaintiff had not explained how a "fit of depression and despair" entailed such

4   extreme distress that no reasonable person should be expected to endure it); *Schultz v. Stericylce,*

5   *Inc.,* No. CV F 13–1244 LJO MJS, 2013 WL 4776517, at *8 (E.D. Cal. Sept. 4, 2013) (finding

6   allegations of "pain and suffering, extreme and severe mental anguish, and emotional distress with

7   no fact[s] to support such symptoms or conditions" failed to meet "severe emotional distress"

8   prong).

9        Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's cause of action

10   for IIED. The Court grants the motion with leave to amend because no "undue delay, bad faith or

11   dilatory motive" by Plaintiff has been shown. *Carvalho,* 629 F.3d at 892.

12        **D.    Breach of Implied Contract**

13        Defendants move to dismiss Plaintiff's sixth cause of action that Defendant State Farm

14   breached her implied contract when terminating her without good cause and without conducting an

15   "appropriate investigation," and by not taking all "reasonable steps to prevent discrimination and

16   protect her from discrimination." Compl. at ¶¶ 78-83. The Court GRANTS Defendants' motion to

17   dismiss this cause of action.

18        California Labor Code § 2922 states, "An employment, having no specified term, may be

19   terminated at the will of either party on notice to the other . . . ." Cal. Lab. Code § 2922. An at-will

20   employment contract gives an employer wide latitude to terminate an employee's contract. *See*

21   *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1386 (1999) ("[Without] any

22   evidence of the duration or term of employment under a written or oral agreement, there is a

23   statutory presumption that employment is terminable at will, and a contract of employment may be

24   ended at any time at the option of either party."). However, this presumption of at-will employment

25   can be superseded contractually with either an express or implied agreement. *See Foley v.*

26   *Interactive Data Corp.*, 47 Cal. 3d 654, 667 (1988). The California Supreme Court has identified

27   several factors relevant in determining the existence of an implied contract that would turn an at-

28   will contract to a permanent-employment contract including "the personnel policies or practices of

19

the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Id.* at 680 (citation omitted). Under the totality of circumstances, it is not necessary that each element be present, but all elements together must permit an inference that an employment contract exists. The existence of an implied contract to discharge an employee only for good cause is normally a question of fact. *See Alexander v. Nextel Communications, Inc.*, 52 Cal. App. 4th 1376, 1381 (1997) (citation omitted). Courts look to the "totality of the circumstances" to "determine the nature of the contract. Agreement may be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances." *Foley*, 47 Cal. 3d at 681 (citation omitted).

Here, Plaintiff alleges she had an implied contract with Defendants with essentially two provisions: (1) that "her employment with Defendant State Farm would continue so long as she discharged her obligations and duties under the employment agreement," or in other words, that she had a contract for permanent employment in which she could only be fired for cause; and (2) "that Defendant State Farm would honor its written policies to comply with the Laws of the United States and the Laws of the State of California by preventing discrimination and protecting her from discrimination, including retaliation." *Id.* at ¶ 82. In the section of the Complaint setting forth her breach of implied contract cause of action, Plaintiff cites to only two factors supporting the formation of such an implied contract: (1) Plaintiff's loyal employment for over twenty years, and (2) her "reasonable expectation that her employment with Defendant State Farm would continue so long as she discharged her obligations and duties under the employment agreement." Compl. at ¶¶ 80, 82. Plaintiff also incorporates all the allegations in the preceding paragraphs of her Complaint into this cause of action, and thus the Court infers that Plaintiff believes an implied contract was formed based also in part on an alleged statement from an HR Director stating "[she] could steal from the company and still get a pension. You are vested." *See* Compl. at ¶ 14. Plaintiff also alleges she received good performance reviews on an annual basis. *Id.* at ¶ 19. Defendants move to dismiss Plaintiff's claim, arguing that (1) Plaintiff's alleged facts do not give rise to an implied

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1     contract as a matter of law, and (2) there was no consideration for such an implied contract, so the

2     contract was invalid even if it existed. Mot. at 11-12.

3          First, the Court concludes Plaintiff has failed to allege facts to support the existence of an

4     implied contract for permanent employment. It is clear Plaintiff has presented adequate evidence to

5     demonstrate longevity of service, one of the relevant factors, as Plaintiff alleges she was an

6     employee for over twenty years. In *Foley*, the court found that six years and nine months was

7     sufficient to satisfy the "longevity of employment" element of a claim for an implied-in-fact

8     employment contract. *Foley*, 47 Cal. 3d at 681. Plaintiff also points to her satisfactory performance

9     reviews. Compl. at ¶ 19. Yet, as Defendants correctly point out, longevity of service and good

10    performance reviews alone are not enough to prove the existence of an implied contract, *see* Mot.

11    at 11 (citing *Miller v. Pepsi-Cola Bottling Co.*, 210 Cal. App. 3d 1554, 1559 (1989) ("Promotions

12    and salary increases are natural occurrences of an employee who remains with an employer for a

13    substantial length of time. These factors should not change the status of an 'at-will' employee to

14    one dischargeable only for 'just cause.'")); *see also Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 341-

15    42 (2000) ("[A]n employee's mere passage of time in the employer's service, even where marked

16    with tangible indicia that the employer approves the employee's work, cannot alone form an

17    implied-in-fact contract that the employee is no longer at will. Absent other evidence of the

18    employer's intent, longevity, raises and promotions are their own rewards for the employee's

19    continuing valued service; they do not, in and of themselves, additionally constitute a contractual

20    guarantee of future employment security.").

21         Apart from her additional conclusory allegation that she had a "reasonable expectation" of a

22    permanent employment contract, Plaintiff further alleges that when she asked an HR representative

23    "if she would receive a pension if Defendant Colker were to fire her," the representative told her

24    she "could steal from the company and still get a pension. You are vested." Compl. at ¶ 14.

25    Plaintiff argues this was an "action[] or communication[] by the employer reflecting assurances of

26    continued employment," one of the other factors the court is to consider in the totality of

27    circumstances. Opp'n at 22. The Court fails to see how this statement reflects an assurance that

28    Plaintiff had a permanent employment contract. It is *not* a statement concerning employment status

1    at all, but rather pensions. It is simply a statement that Plaintiff's vested pension benefits could not

2    be taken away from her even if she were to be fired. Even if, arguably, the statement "you are

3    vested" may have been construed by Plaintiff to mean that her employment was in some sense

4    "vested" and thus permanent, "vague assurances" do not suffice to show an implied contract. *Horn*

5    *v. Cushman & Wakefield W., Inc.*, 85 Cal. Rptr. 2d 459, 473 (Cal. App. 1st Dist. 1999) (holding

6    that evidence of positive performance reviews, commendations, salary increases, and vague

7    assurances that Plaintiff would become a sales manager was not sufficient to create a triable issue

8    of fact as to whether the parties had implicitly agreed [the company's] right to terminate [him]

9    would be limited."); *see also Pomeroy v. Wal-Mart Stores, Inc.*, 834 F. Supp. 2d 964, 976 (E.D.

10   Cal. 2011) (vague allegations that managers told plaintiff she "was doing a great job," "would

11   probably be around forever," and "was part of the fixtures around there" did not suffice to create

12   implied contract for permanent employment); *Gould v. Maryland Sound Indus., Inc.,* 37

13   Cal.Rptr.2d 718, 727 (Cal. Ct. App. 1995) (concluding that supervisor's vague references to long-

14   term employment insufficient to establish agreement not to terminate without good cause); *Sullivan*

15   *v. Compton*, 120 F.3d 269, at *2 (9th Cir. 1997) (unpublished) ("Sullivan's supervisors' oblique

16   language regarding her job security does not suffice to overcome the presumption of at-will

17   employment[.]"). The Court notes that the Complaint lacks allegations of any other

18   communications or actions of Defendants that reflect assurances of continued employment. This

19   distinguishes *Foley*, which Plaintiff relies on, where the defendant repeatedly verbally assured the

20   plaintiff that his employment was secure so long as his performance remained adequate. *Foley,* 47

21   Cal. 3d at 663, 681. In sum, Plaintiff fails to allege sufficient facts to support her implied contract

22   theory for permanent employment. However, the Court gives Plaintiff leave to amend her claim

23   that she had an implied contract for permanent employment because Plaintiff may be able to cure

24   this claim.

25         The Court, however, dismisses with prejudice Plaintiff's implied contract claim based on

26   the alleged failure by Defendants to follow the law. Defendants argue Plaintiff's breach of implied

27   contract claim fails as a matter of law because it "is based on an alleged contractually binding

28   promise by State Farm to abide by the law" and that State Farm "breached its expressed and

1   implied duty at law to provide a work environment free of discrimination and to take all reasonable

2   steps to prevent discrimination." Mot. at 12 (citing complaint at ¶ 82). Defendants argue that

3   "contracts requiring a party to abide by the law lack adequate consideration, and therefore are

4   invalid." *Id.* at 13. Defendants are correct. In California, a promise to refrain from unlawful

5   conduct is unlawful consideration. *See Kallen v. Delug,* 157 Cal. App. 3d 940, 949 (1984). Thus, a

6   contract that includes such a promise as consideration is illegal, and thus void. *Id.*; *see also*

7   *Schaefer v. Williams*, 15 Cal. App. 4th 1243, 1246-47 (1993) (holding that a contract cannot be

8   premised on a promise to not break the law); *Floor Seal Technology, Inc. v. Sinak Corp.*, 156 Fed.

9   Appx. 903, at *1 (9th Cir. 2005). Accordingly here, any contract based on a promise by State Farm

10   to comply with the anti-discrimination statutes such as the FEHA or Title VII is void as illegal.

11   Thus, the Court dismisses with prejudice Plaintiff's claim that she had an implied contract with

12   State Farm that State Farm would obey the law.

13        In sum, Defendants' Motion to Dismiss Plaintiff's claim for breach of implied contract is

14   GRANTED, in part with leave to amend and in part with prejudice.

15        **E.        Breach of Implied Covenant of Good Faith and Fair Dealing**

16        In her seventh cause of action, Plaintiff alleges that State Farm breached "the implied

17   covenant of good faith and fair dealing" by failing to properly investigate all allegations against her

18   before terminating her employment. Compl. at ¶¶ 84-87. Defendants move to dismiss this claim by

19   arguing it is superfluous because it is not distinct from Plaintiff's breach of implied contract claim.

20   Mot. at 13-14. The Court GRANTS Defendants' motion with leave to amend.

21        Every contract contains an implied-in-law covenant of good faith and fair dealing. *Foley,*

22   47 Cal. 3d at 683–84. "Simply stated, the burden imposed is that neither party will do anything

23   which will injure the right of the other to receive the benefits of the agreement . . . the implied

24   covenant imposes upon each party the obligation to do everything that the contract presupposes

25   they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,* 222 Cal. App.

26   3d 1371, 1393 (1990) (citations, quotations, and alterations omitted). However, the law is clear that

27   there can be no duty of good faith arising from the implied covenant where there is no underlying

28   contract. *See Foley,* 47 Cal. 3d at 684; *Smith v. City and County of San Francisco,* 225 Cal. App.

23

**United States District Court**
For the Northern District of California

1    3d 38, 49 (1990) ("The prerequisite for any action for breach of the implied covenant of good faith

2    and fair dealing is the existence of a contractual relationship between the parties, since the

3    covenant is an implied term in the contract."). Thus, because this Court has already concluded that

4    Plaintiff fails to allege she had an implied contract for permanent employment, the Court GRANTS

5    Defendants' motion to dismiss Plaintiff's breach of implied covenant claim. However, because

6    Plaintiff might amend her Complaint to add allegations which sufficiently allege the existence of

7    an implied contract, the Court will permit Plaintiff to reallege her breach of implied covenant claim

8    in her first amended complaint. Thus, the dismissal is without prejudice.

9            However, the Court notes that if Plaintiff plans to reallege her covenant claim, Plaintiff

10   must amend the underlying factual basis of the claim if the claim is to survive a motion to dismiss.

11   This is because there is a second basis for dismissal of Plaintiff's covenant claim. Notably,

12   although the California Supreme Court has held that a plaintiff may bring *both* a breach of contract

13   claim and a claim for breach of the implied covenant of good faith and fair dealing, the Supreme

14   Court has made clear that when both causes of action cite the same underlying breach, the implied

15   covenant cause of action will be superfluous with the contract cause of action. *See Guz*, 24 Cal. 4th

16   at 327 ("[W]here breach of an actual term is alleged, a separate implied covenant claim, based on

17   the same breach is superfluous."). In other words, a claim alleging breach of the implied covenant

18   of good faith and fair dealing cannot be "'based on the same breach' as the contract claim," or else

19   it will be dismissed. *Daly v. United Healthcare Ins. Co.,* 10–CV–03032 LHK, 2010 WL 4510911,

20   at *4 (N.D. Cal. Nov. 1, 2010) (quoting *Guz*, 24 Cal. 4th at 327).

21           Here, the Complaint states that both Plaintiff's cause of action for breach of implied

22   contract and her cause of action for breach of the implied covenant of good faith and fair dealing

23   are based on the allegation that State Farm failed to properly investigate the allegations against her

24   before terminating her employment. *Compare* Compl. at ¶¶ 78-83, with *id.* at ¶¶ 84-87. Thus,

25   Plaintiff's breach of implied covenant claim based on this theory is "simply duplicative [of her

26   breach of contract cause of action], and thus may be disregarded." *Careau,* 222 Cal.App.3d at

27   1392; *see also Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1066 (C.D. Cal. 2005)

28   (dismissing plaintiff's breach of covenant claim because it was duplicative of his breach of contract

24

United States District Court
For the Northern District of California

claim); *Integrated Storage Consulting Services, Inc. v. NetApp, Inc.*, 2013 WL 3974537, at *7 (N.D. Cal. July 31, 2013) (same).

However, a claim for breach of the implied covenant of good faith and fair dealing is not superfluous with a breach of contract claim when the covenant claim is based "on a different breach than the contract claim." *Daly,* 2010 WL 4510911, at *4. Plaintiff appears to argue in her opposition that State Farm also breached the covenant by retaliating against her by "taking steps to undermine Plaintiff's performance of her estimator obligations," and by "failing to exercise its [discretionary] power in good faith" by "supervising [Plaintiff] with discriminatory animus" and "creat[ing] a record that would later justify [its] subsequent finding that [it] had good cause for terminating Plaintiff's employment." Opp'n at 24-25. Although Plaintiff's opposition does not further elaborate on the details of this theory, the Court gleans that there could be a basis for Plaintiff's covenant claim that is distinguishable from the basis underlying her implied contract claim such that Plaintiff's covenant claim is not superfluous. Thus, if Plaintiff realleges her covenant claim, she is forewarned that she should rest her claim on allegations concerning State Farm's alleged retaliatory action or failure to properly exercise discretion, as opposed to allegations that State Farm terminated her employment without cause.

In sum, the Court dismisses Plaintiff's claim for breach of the implied covenant of good faith and fair dealing with leave to amend.

## IV.    CONCLUSION

The Court DENIES Defendant's motion to dismiss as to Plaintiff's hostile environment claims, GRANTS Defendants' motion to dismiss Colker from Plaintiff's wrongful termination claim, and GRANTS Defendants' motion to dismiss Plaintiff's IIED claim, breach of implied contract claim, and breach of implied covenant of good faith and fair dealing claim. Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss. The only claim that is dismissed with prejudice is Plaintiff's breach of implied contract claim based on Defendants' alleged failure to follow the law.

**IT IS SO ORDERED.**

Case No.: 5:14-cv-00789-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Dated: July 23, 2014

LUCY H. KOH

Case No.: 5:14-cv-00789-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California